CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO, Plaintiff, Appellee, and Cross–Appellant,

v.

Robert J. ALLEN, Sue A. Allen, Don R. Bingham, Myrle N. Bingham, Marriner F. Bingham, Maralyn B. Bingham, Wallace Brown, Patricia L. Brown, Merril Bryan, Susan Bryan, Wallace F. Bryner, Bonnie Bryner, Sandra J. Christen-

sen, the Estate of Andrew Christensen, Sherman L. Cloward, Sheryle L. Cloward, Wells P. Cloward, Myrle L. Cloward, Kay Cullimore, A.R. Ellingson, William L. Ellingson, Joy Ellingson, Ned A. Gregorson, Dixie Gregorson, Roy A. Hammond, Frances B. Hammond, Duane J. Kelson, Whitney K. Kelson, Desmond O. Larson, Wilda W. Larson, David K. Miller, Linda C. Miller, F. Jackson Millet, Marian Millet, Harvard G. Nelson, Mary C. Nelson, John C. Nelson, Linda Nelson, Gordon A. Peterson, Julie Peterson, Glenn O. Simmons, Denise Simmons, Thomas E. Soderberg, Cindy Soderberg, Kelvyn H. Cullimore, Defendants, Appellants, and Cross–Appellees.

CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO, Plaintiff, Appellee and Cross–Appellant,

v.

Raymond K. HENDRICKSON, Diane O. Hendrickson, Ted L. Christensen, Kathleen S. Christensen, Robert J. Allen, et al., Defendants, Appellants, and Cross–Appellants.

Nos. 880111, 880138.

Supreme Court of Utah.

April 5, 1991.

L. Ridd Larson, Anthony W. Schofield, Rick L. Rose, Provo, for Continental Ill. Nat. Bank.

Kay L. McIff, Richfield, for Raymond K. Hendrickson, Diane O. Hendrickson, Ted L. Christensen and Kathleen S. Christensen.

Harold A. Hintze, Provo, for remaining appellants.

HOWE, Associate Chief Justice:

Continental Illinois National Bank and Trust Company of Chicago sought payment of a debt owed by a bankrupt limited partnership, Color Craft Press, Ltd. In the trial court, the Bank obtained judgment against defendant Kelvyn H. Cullimore, an officer of a corporation that was the general partner. He had personally guaranteed the debt. The Bank also obtained judgment against the other defendants, all limited partners who had agreed to pay up to 500 percent of their subscription amount toward the partnership debt. The trial court, however, refused the Bank judgment on a guaranty by the limited partners to pay up to 150 percent of their pro rata share of the indebtedness. Defendants Kelvyn Cullimore and the limited partners appeal from the judgments entered against them. The Bank cross-appeals from the denial of recovery on the guaranty.

Color Craft Press, Ltd., was organized as a Utah limited partnership in 1979. At that time, there were eleven limited partners. Defendant Kelvyn Cullimore was an officer of a corporation which was one of the general partners. Color Craft bought a press known as the Harris press and commenced operation. Each limited partner was required to sign an "unconditional guaranty" for 15 percent of Color Craft's outstanding indebtedness which limited liability "up to an original aggregate principal amount of $1,485,028.00," the principal cost of the press.

In June 1980, Color Craft sent a proposal to all its limited partners and potential new investors. The eighty-page prospectus and accompanying letter proposed the purchase of a new press (press B) and the creation of a new class of limited partnership interest to be known as class B. The prospectus contained a form of subscription agreement by which limited partners could subscribe for and agree to buy class B interests. The letter advised that in the formulation of class B investors, the partnership agreement would need to be modified. On or about September 22, 1980, Color Craft sent another letter to its partners advising of the decision to proceed with creation of the class B interests and the adoption of a restated and amended partnership agreement which created class B limited partnership interests. The amended and restated limited partnership agreement contained, among others, the following terms:

7.5 *Class B.* The Class B Limited Partners hereby agree to contribute to the Partnership, in their Distribution Ratio, the amounts of principal and interest on financing for acquisition of Press B as such payments come due to the extent that the Partnership does not have sufficient cash from other sources to make such payments. Such additional payments shall in no event exceed five hundred percent (500%) of a Class B Limited Partner's Subscription. The Class B Limited Partners agree to personally guarantee repayment of indebtedness incurred by the Partnership to acquire Press B; provided, however, the maximum amount guaranteed by any Class B Limited Partner shall not exceed 150 percent of such Limited Partner's pro rata share of the total indebtedness with Roberts and Porter, Inc. and 15 percent of the total indebtedness with Litton Industries Credit Corporation. The Class B Limited Partners shall execute such additional documents and instruments as may be required by the lender to evidence this guarantee.

Section 6.9 of the amended and restated limited partnership agreement used the term "Press B" to describe "the Nebiolo Target 1 Web Offset Press and associated equipment...."

A copy of the proposed form of amended and restated limited partnership agreement containing paragraph 7.5, set out above, was attached to the September 22, 1980 letter to the partners. The letter reiterated the partnership agreement term that each limited partner would be required to personally guarantee repayment of Color Craft's debt incurred in the acquisition of press B and associated equipment. The letter added this proviso, which contains a

debt estimate not found in the partnership agreement:

> provided, however, the maximum amount guaranteed by any Class B limited partner shall not exceed 150 percent of such limited partner's pro rata share of the total indebtedness *of approximately $3,550,000* with Roberts and Porter, Inc. and 15 percent of the total indebtedness *of approximately $450,000* with Litton Industries Credit Corporation.

(Emphasis added.)

In his memorandum decision, the trial judge found:

> Reference in the same document [letter of 9–22–80] to time payments totaling $5,903,254.00 did not necessarily convey to the Limited Partners there would be a requirement on their part to guarantee a portion of the figure ($5,903,254.00) because of (1) the specific reference in the same document to a "maximum amount of $3,550,000," and (2) the prior acquisition of the Harris Press [in 1979] had included principal only.

The letter of September 22, 1980, additionally informed the limited partners that Cullimore would be required to guarantee 100 percent of the indebtedness. It gave each partner the option to withdraw from the limited partnership if he or she did not agree with the terms of the letter. No partners withdrew. The trial court found that "each defendant, to become a limited partner, was required to execute a subscription agreement." The court noted the names of thirty defendants for whom subscription agreements had been found and twenty defendants for whom no subscription agreement had been found. Nevertheless, the court found that with the exception of Cullimore, each defendant invested money in and became a partner in Color Craft, intending to be a class B limited partner.

From June 1980 through October 1980, William O'Mara, the president of the general partner corporation, negotiated with Roberts and Porter, Inc., for the purchase of the Nebiolo press and a Muller–Martini binder. The contract was signed by O'Mara on behalf of Color Craft on October 8, 1980. The total *deferred* purchase price was approximately $6.9 million. Color Craft executed promissory notes and security agreements granting Roberts and Porter a security interest in the equipment. Continental Bank advanced the purchase price of the equipment to Roberts and Porter in exchange for an assignment to the Bank of all Roberts and Porter's rights under the contract with Color Craft.

The Bank was not satisfied that it was adequately protected by the limited partnership agreement making the class B partners liable for the total indebtedness of Color Craft. Consequently, the Bank had Color Craft send each limited partner a guaranty and subordination agreement, the interpretation of which would be governed by Illinois law. Between October 10, 1980, and November 30, 1980, thirty-three limited partners executed the guaranty agreements. Several did not do so because the agreement contained a blank where the pro rata share of indebtedness guaranteed was to be stated. Two limited partners wrote $50,000 in this blank space. Someone later added "3.58%."

In June 1981, a second amended and revised limited partnership agreement was executed. It contained the earlier agreement's provisions for an additional capital contribution not to exceed 500 percent and the payment of 150 percent of each limited partner's pro rata share of total indebtedness.

Color Craft later filed for bankruptcy. At a public sale, the bankruptcy trustee sold Color Craft's right to additional capital contribution from its limited partners to the Bank. The Bank also bought all Color Craft's rights against Roberts and Porter. The Bank sold the press and binder in a commercially reasonable manner and applied the proceeds in reduction of the debt. It then commenced this action against Cullimore and the limited partners.

The trial court found that the general and limited partners of Color Craft intended that the class B limited partners would make additional capital contributions toward the partnership debt to the Bank. The court held that a "recognition of a

right of performance in Continental Bank on the partnership agreements as third-party beneficiary contracts is appropriate to effectuate the intention of the parties." This language closely follows Restatement (Second) of Contracts section 302 (1981). Illustration 1, accompanying section 302, provides (substituting parties):

A [Color Craft] owes C [Continental Bank] a debt of $100. The debt is barred by the statute of limitations or by a discharge in bankruptcy, or is unenforceable because of the Statute of Frauds. B [limited partners] [promise] A to pay the barred or unenforceable debt. C is an intended beneficiary under Subsection (1)(a) [of section 302].

■ In the instant case, the limited partners promised Color Craft additional capital contributions. Color Craft became bankrupt. The Bank could not collect the debt from Color Craft, but was the intended beneficiary of the limited partners' agreement to make additional capital contributions toward the indebtedness incurred by the acquisition of press B.

Similarly, the Bank is also a third-party beneficiary of the latter part of paragraph 7.5 of the partnership agreement. There, the limited partners agree to personally guarantee payment of a portion of the indebtedness incurred by Color Craft to acquire press B from Roberts and Porter, Inc. Clearly, Roberts and Porter, Inc., was a third-party beneficiary, and the Bank became a beneficiary when it took an assignment of Roberts and Porter's rights under the purchase contract. Further, in the last sentence of paragraph 7.5, reference is made to a "lender" in connection with the acquisition of the press. The limited partners agree to execute such additional documents which the lender may require to evidence their guaranty. This reference complies with section 302 of the Restatement (Second) of Contracts, which states that a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intentions of the parties. Here, the trial court concluded that recognition of a right of performance in Continental Bank on the partnership agreement as third-party beneficiary was appropriate to effectuate the intention of the parties.

■ Defendants argue that the Bank cannot enforce the partnership agreement because it was an executory contract which was not assumed by the trustee in bankruptcy within the sixty-day limit imposed by the Bankruptcy Code, 11 U.S.C. § 365(a). Defendants rely upon a minute entry from the bankruptcy proceeding wherein it is noted that the certificate of limited partnership "is an executory contract." However, the signed order of the bankruptcy judge authorizing the trustee's sale of the possible cause of action for additional capital contributions contains no finding or opinion on the issue of an executory contract. There was no issue preclusion at the trial court level, and the trial judge was free to rule as he did that the partnership agreement was not an executory contract.

■ Defendants also contend that there was a failure of consideration. They argue:

The Bank could have initially and timely sought performance of said Agreement but, instead, chose to remove the press from the Bankruptcy Court and sell it on the open market and apply the proceeds against the debt. Having done so, they have destroyed the *res* of the contract. They can no longer perform their obligation of the contract, *to wit:* deliver the press to the partnership, thereby conveying to the limited partners an asset and an associated tax benefit.

This ingenious theory requires a secured creditor to forego commercially reasonable sales until the defaulting party has fully realized the tax advantages of depreciation on the secured item, by which time the secured item is worthless to the creditor. The bankruptcy court authorized the commercially reasonable resale of the press by the Bank. The application of the proceeds to the debt owed by the limited partners benefited them. The limited partners bargained for the press to be delivered to Color Craft. Delivery to Color Craft binds

the promisors. *See* Restatement (Second) of Contracts § 71(4) & illustration 18 (1981).[1]

The same principle of law applies to Cullimore, who bargained for the delivery of the press to Color Craft and received consideration for his promise upon delivery. *See id.; A.M. Castle & Co. v. Bagley,* 24 Utah 2d 136, 139, 467 P.2d 408, 409 (1970) (consideration in the form of forbearance to attach a close corporation's accounts receivable was sufficient to bind stockholder who executed promissory note for such consideration).

■ Cullimore contends that the trial court erred in finding him personally liable on promissory notes executed to Roberts and Porter for the cost of the press. A promissory note dated October 7, 1980, was signed by "Kelvyn Cullimore," "A.V. Moxley," and "William G. O'Mara Pres." Cullimore did not sign in a representative capacity. "[T]he general rule is that when a person signs a promissory note without indicating that he is signing as the authorized representative of another, he becomes personally liable thereon." *Myers v. Morgan,* 626 P.2d 410, 411 (Utah 1981). In addition to the promissory note, Cullimore signed a "Guaranty Agreement" on the same day. The guaranty was an unconditional assumption of 100 percent of the debt to Roberts and Porter. Cullimore was represented as "an individual" and as "Buyer" on the guaranty agreement, which provided for the continued efficacy of the liability notwithstanding "the insolvency, bankruptcy or reorganization of Buyer." The trial court did not err in finding Cullimore personally liable for the whole debt.

Defendant limited partners contend that even if they are liable, they were asked only to guarantee the principal amount of the debt. The partnership agreement does not limit liability to the principal amount. The trial judge did find that the limited partners may not have known that they were assuming liability beyond $3,555,000. However, he also found:

> Each of the limited partner-defendants authorized the general partner to negotiate the terms of the purchase, including financing terms and the waivers of certain defenses, and, prior to execution of their guaranty agreements, [which was prior to the execution of the amended and revised limited partnership agreement of 1981], each of the limited partner defendants had sufficient time to learn all of the terms of the purchase contract.

The managing general partner "knew all of the terms of the purchase transaction, including the total purchase price of $6.9 million prior to the time of the closing of the purchase transaction." The limited partners are therefore bound by the actions of the general partner which they authorized in the limited partnership agreement.

The trial court held that guaranties provided by the Bank and signed by some class B limited partners did not bind the limited partners under Illinois law. We find it unnecessary to reach that issue since under the partnership agreement the Bank is entitled to recovery under section 7.5 on both the provisions for an additional capital contribution and on the guaranty.

The judgment below is affirmed in part and reversed in part, and the case is remanded for entry of judgment in accordance with this opinion.

HALL, C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.

---

1. Section 71 provides: "(1) To constitute consideration, a performance or a return promise must be bargained for.... (4) The performance or return promise may be given to the promisor or to some other person It may be given by the promisee or by some other person." Illustration 18 states: "A promises to pay $1,000 to B, a bank, in exchange for the delivery of a car by C to A's son D. The delivery of the car is consideration for A's promise."