452 P.2d 325

Carl A. PALOMBI, Plaintiff and Respondent,

v.

D & C BUILDERS, Defendant and Appellant.

No. 11284.

Supreme Court of Utah.

March 21, 1969.

---

————◆————

Horace J. Knowlton, Salt Lake City, for appellant.

William J. Critchlow III, Ogden, for respondent.

CROCKETT, Chief Justice.

Plaintiffs sued for damages to their home on Adams Avenue in Ogden caused by faulty workmanship by the defendant's workmen in the performance of a contract for installing siding thereon. The defendant counterclaimed for labor and materials furnished and for the foreclosure of a claimed mechanic's lien. The trial court found the issues for the plaintiffs and awarded judgment for $627 for damage to plaintiffs' house, $250 attorney's fee, and $1000 exemplary damages, and denied defendant recovery on its counterclaim for lien foreclosure. Defendant appeals attacking each of those determinations as error.

On April 23, 1966, defendant's sales representatives called at plaintiffs' home and persuaded them to enter into a contract for defendant to place aluminum siding on their house. As part of the sales talk it was represented that plaintiffs would receive very special treatment because their home was to be used as a "show house" on television; that the materials and the workmanship would be "A No. 1", for which they were to pay $3290 at $51.32 per month for 96 months.

Two days later, April 25, 1966, defendant's workmen began their work. From the beginning it appeared to the plaintiffs not to be in keeping with the promises which had been made. After the first day's work plaintiff complained to the defendant's office by telephone; and twice thereafter made similar complaints. After failing to get any satisfactory response from the defendant, plaintiff phoned the Ogden City Building Inspector, who issued a "Stop Work" order on May 6, 1966, because of defendant's failure to obtain an Ogden City building permit. The next day plaintiff ordered the defendant's workmen off the premises and threatened "If you don't get off, I will call the law on you." The workmen complied with this order and left, taking their tools and building materials with them. At least twice thereafter plaintiffs refused defendant's request that they be permitted to resume the work; and according to plaintiffs' evidence, there was no additional work done or material furnished after May 7, 1966.

Ninety-five days thereafter, on August 10, 1966, defendant filed a materialman's lien against plaintiffs' home, reciting that the last work was done on May 24, 1966.

### Rejection of the Claim of Lien

 As an original contractor defendant had 80 days after the last work was done or material furnished in which to file a notice of lien. Sec. 38–1–7, U.C.A.1953. Defendant contends that this time did not begin to run until May 24, 1966, placing reliance on the fact that on that date its manager obtained a building permit, and that thereafter it removed building materials from plaintiffs' residence. The work done or material furnished must be something substantial in connection with the performance of the contract and this is not satisfied by trivialities which may be used as a pretext to extend the lien period.[1] Whether under the circumstances here shown what was done amounts to something substantial is a question of fact to be determined by the trial court. Upon disputed evidence, it found that the recital in the notice of lien, " * * * wrongfully misrepresented the date upon which the last labor and materials were furnished," and that it was invalid. Under traditional rules of review this finding cannot be disturbed.[2]

### The Compensatory Damage

 The rule of review just referred to is also applicable to the error charged in the finding of compensatory damage. The evidence is that the plaintiffs' home was constructed of comparatively soft bricks, which were highly susceptible to chipping and splitting. Plaintiffs said that this was occurring extensively and that the nails were not holding in the defendant's nailing the stripping to the house upon which to anchor the aluminum siding. Corroborating this, a state building inspector testified that the stripping did not meet required standards in its application. There is substantial, credible evidence that the cost of repair of the house would exceed the $627 assessed by the trial court.

### The Attorney's Fee

 The argument as to attorney's fees is that because they were not asked for in plaintiffs' complaint they should not have been granted. The action was commenced as a suit for damages and attorney's fees could not have been asked for properly in the original complaint. However, by its counterclaim for foreclosure of a mechanic's lien the defendant converted the action into a controversy over the enforcement of a lien. Sec. 38–1–18, U.C.A.1953, provides: "In any action brought to enforce any lien under this chapter the successful party shall be entitled to recover a reasonable attorneys' fee, to be fixed by the court, which will be taxed as costs in the action."

It will be noted that the statute confers the benefit not only on the one who asserts

---

1. Nagle v. Club Fontainbleu, 17 Utah 2d 125, 405 P.2d 346.

2. Whittaker v. Ferguson, 16 Utah 240, 51 P. 980.

the lien but upon "the successful party"; in this instance the plaintiff, who defended against the lien.[3] The fact that there was no specific pleading in that regard does not preclude such an award. It is indeed important that the issue be raised and that the parties have full opportunity to meet it.[4] But when that is done, our rules indicate that there shall be liberality of procedure to reach the result which justice requires. Rule 1(a), U.R.C.P., provides that they shall be "liberally construed" to secure a "just * * * determination of every action" and Rule 54(c) (1) provides " * * * every final judgment shall grant the relief to which the party * * * is entitled, even if the party has not demanded such relief in his pleadings."

The Punitive Damage

The charge of error in the award of punitive damages is well taken. Such damages serve a dual purpose: as an entitlement of the plaintiff for being subjected to a particularly grievous injury, and as a punishment to the defendant, and a warning to him and others, not to engage in similar evil conduct. In order to justify their imposition it must appear, not only that there was a wrongful invasion of the plaintiff's rights, but that it was done wilfully and maliciously.[5] Notwithstanding the fact that the record does contain evidence of seeming carelessness and of low-quality workmanship as to what was done to plaintiff's house, we do not perceive therein any sufficient basis to justify the award of this type of damage; and it is therefore vacated.

Affirmed, except as to the punitive damages. No costs awarded.

CALLISTER, TUCKETT, HENRIOD and ELLETT, JJ., concur.

---

3. See Smoot v. Checketts, 41 Utah 211, 218, 125 P. 412.

4. See Taylor v. E. M. Royle Corp., 1 Utah 2d 175, 264 P.2d 279; Morris v. Russell, 120 Utah 545, 236 P.2d 451, 26 A.L.R.2d 947.

5. Evans v. Gaisford, 122 Utah 156, 247 P. 2d 431; Powers v. Taylor, 14 Utah 2d 152, 379 P.2d 380; 123 A.L.R. 1119; Calhoun v. Universal Credit Co., 106 Utah 166, 146 P.2d 284; 25 C.J.S. Damages § 123.