771 P.2d 1100 (1989)
Jack C. DANIELS, Third-Party Plaintiff and Appellant,
v.
DESERET FEDERAL SAVINGS & LOAN ASSOCIATION, A-One Construction, Inc., Miller Brick Sales, Eugene E. Doms, and Michael R. McCoy, Respondents.
CEN CORPORATION, Plaintiff,
v.
Jack C. DANIELS, Debra Estes, Scott Berry, Debra Ann Sitzberger, and Amy Stanton Eagleson, Defendants.
No. 880135-CA.
Court of Appeals of Utah.
April 5, 1989.
Rehearing Denied April 26, 1989.
Gordon A. Madsen, Murray, and Robert C. Cummings, Salt Lake City, for third-party plaintiff and appellant.
David R. Olsen, Carl F. Huefner, and Charles P. Sampson, Salt Lake City, for respondents.
*1101 Before DAVIDSON, GARFF and JACKSON, JJ.

OPINION
DAVIDSON, Judge:
Jack C. Daniels appeals from a summary judgment in favor of Deseret Federal Savings & Loan Association, dismissing his notice to hold and claim a lien on property for which he was both a co-owner and the general contractor. Daniels' claim concerned the timeliness of filing his notice and the profits owed to him as a limited partner in Park Avenue Development Company ("Park Avenue"). The trial court held that his lien was both untimely and invalid. We affirm.

FACTS
In 1980, Daniels invested approximately $28,000 in the development of an eight-unit condominium project in Park City, Utah, thereby acquiring an interest through a limited partnership in Park Avenue. The agreement between Park Avenue and Daniels provided that Daniels would receive approximately $80,000 for his share in the profits from the sale of the condominiums and for overhead. Park Avenue also hired Daniels to serve as the general contractor for the condominium project and agreed to pay him approximately $15,000 for his services.
On August 14, 1980, Deseret approved a construction loan to Park Avenue and construction on the project commenced. By the end of July 1981, Daniels had completed all of the construction required pursuant to the construction contract and Park City issued certificates of final inspection and occupancy for the project. Daniels was paid $15,000 for services and labor, but was not paid his promised share of the profits from the sale of the condominiums.
Apparently, Daniels intended to file a notice to hold and claim a lien on the project, for the $80,000 "profit," within the statutory period required for filing. However, the owners of the project were trying to obtain refinancing and they requested Daniels not to file his mechanic's lien for the profit and overhead. In return, the owners promised Daniels that they would allocate his share of the profits to him within two weeks. In reliance on this promise, Daniels did not file his mechanic's lien within the requisite 100 day period. However, the promised payment was not made.
On December 1, 1981, several water pipes in the condominiums froze. The owners called Daniels to inspect the pipes and to make repairs. Daniels inspected the pipes and made phone calls to subcontractors in order to facilitate repairs. On February 3, 1982, Daniels filed a notice of lien against the project, claiming a lien for the $80,000 "profit." He listed December 1, 1981, as the last day labor had been furnished on the project.
In October 1983, Daniels filed a complaint against Deseret to foreclose his claimed lien on the property. Deseret's construction loan to Park Avenue was secured by deeds of trust which Deseret executed February 22, 1982, and recorded March 1, 1982. Deseret subsequently moved to dismiss Daniels' complaint on the basis that Daniels' lien was not filed in a timely fashion as required by Utah Code Ann. § 38-1-7 (1988) and therefore, Daniels had no cause of action as a matter of law. CEN Corporation, subsequent owner of the real property, also moved to declare Daniels' lien void. The trial court agreed that Daniels had not timely filed a mechanic's lien and therefore granted summary judgment in favor of Deseret and CEN Corporation.
Daniels raises two issues on appeal: Did the trial court err when it found Daniels' work on December 1, 1981, did not extend the time limit for filing a notice to hold and claim a lien? Did the trial court err when it held Deseret is not estopped from raising the affirmative defense that the mechanic's lien was not timely filed?

STANDARD OF REVIEW
A court may grant summary judgment if the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Utah R.Civ. P. 56(c). Because a summary judgment is a matter of law, the appellate court gives *1102 the trial court's conclusions no particular deference but rather applies the same standard as that applied by the trial court. Briggs v. Holcomb, 740 P.2d 281, 283 (Utah App. 1987). However, "[o]n appeal from a summary judgment, we review the evidence in a light most favorable to the losing party." Atlas Corp. v. Clovis Nat'l Bank, 737 P.2d 225, 229 (Utah 1987); Geneva Pipe Co. v. S & H Ins. Co., 714 P.2d 648, 649 (Utah 1986).

TIME OF FILING  EXTENSION
A general contractor must record a mechanic's lien within 100 days after completion of the contract. Utah Code Ann. § 38-1-7 (1988). Completion is marked by the end of a related series of tasks required for substantial completion of the contract. "Trivial or minor adjustments made casually or long after the main work is completed cannot be used to tie on to as the last labor done or materials furnished." Wilcox v. Cloward, 88 Utah 503, 56 P.2d 1, 6-7 (1936).
Well over 100 days after completion of the contract, Daniels spent a day inspecting the damage from the frozen water pipes and calling subcontractors in order to make repairs. Daniels contends that this extends the period for filing his mechanic's lien. However, the trial court found:
The work the owners wanted done in December of 1981 was not a continuation of the earlier project, but merely repairs. If repairs to a completed project could be construed as extending the time in which a mechanic's lien could be filed, mechanic's [sic] liens could be filed many years after a project had been completed.
We agree with the trial court's findings. In order to extend the time for filing his mechanic's lien, the work Daniels did in December 1981 would have to substantially relate to the performance of the contract. "The work done or material furnished must be something substantial in connection with the performance of the contract and this is not satisfied by trivialties which may be used as a pretext to extend the lien period." Palombi v. D & C Builders, 22 Utah 2d 297, 452 P.2d 325, 327 (1969).
In Palombi, the original contractor argued that the date of completion was the date on which the building permit was obtained and some remaining building materials were removed from the property owner's residence. The court held that these were trivial activities in light of the substantial completion of the contract, and they could not be used to extend the date of completion. Similarly, the inspection and repairs undertaken by Daniels in December 1981 were not services used in the construction, alteration, or improvement of the building, nor did the services add directly to the value of the property. Therefore, the inspection cannot extend the time period for filing notice of a mechanic's lien.
Daniels contends that Park Avenue and subsequent owners are estopped from pleading untimely filing of the notice of the lien as an affirmative defense because he was induced by the project owners not to file a lien within the requisite 100 day filing period. Deseret contends that it had no knowledge of the agreement between Park Avenue and Daniels and that it was not in privity with Daniels. Therefore, Deseret argues, estoppel cannot be asserted against it.

SERVICES AND MATERIALS FURNISHED
We do not need to reach the merits of the estoppel argument. Even if Daniels had filed a timely notice for the $80,000 owing to him for "profit and overhead," this amount was not owed to him for the value of the services he rendered or for materials furnished but from his ownership in Park Avenue as a limited partner. Utah Code Ann. § 38-1-3 (1988) provides that contractors, subcontractors, and laborers who furnish material, provide services, or bestow labor for the construction, alteration, or improvement of a building or structure shall have a lien upon the property for the value of the services and material provided. The value of the services provided by Daniels in his performance as general contractor, was approximately $15,000, for *1103 which he was compensated.[1]
The purpose of the mechanic's lien law "is to preclude landowners from having their lands improved by others, without becoming personally responsible for the reasonable value of materials and labor." Cox Rock Prod. v. Walker Pipeline Constr., 754 P.2d 672 (Utah App. 1988). In order to ascertain when an improvement has been made upon the land, for purposes of determining whether notice of a mechanic's lien can validly be filed, it is necessary that "there be an annexation to the land, or to some part of the realty; or a fixture appurtenant to it, and this must have been done with the intention of making it a permanent part thereof." King Bros., Inc. v. Utah Dry Kiln Co., 374 P.2d 254, 256 (Utah 1962).
Daniels' claim is for the profits he was entitled to as an investor and not for any services or materials that he provided as a contractor. The profits a person is entitled to as the result of an investment do not constitute improvements to the realty nor do they fall within the statutory meaning of services or materials as contemplated in the mechanic's lien law statutes. Accordingly, Daniels' notice to hold and claim a lien, for the profits allegedly owing to him, is invalid. Therefore, the summary judgment in favor of Deseret is affirmed.
GARFF and JACKSON, JJ., concur in the result.
NOTES
[1] It is undisputed that approximately $15,000 was paid to Daniels for his services as contractor. What the "overhead" represented is unclear. In any case, failure to properly preserve the lien right precludes any claim that this overhead should be the subject of a lien.