INTERIORS CONTRACTING, INC., Plaintiff,

v.

SMITH, HALANDER & SMITH ASSOCIATES; American Savings & Loan Association; Walker, McElliot, Wilkinson & Associates; H. Fred Smith; Robert S. Halander; Ronald W. Smith; and Dale N. Minson, Defendants and Appellees,

v.

COONRADT CONSTRUCTION COMPANY and Massachusetts Mutual Life Insurance Company, Defendants and Appellant,

and

Bennett Glass Corporation; Roger Eulberg; Marilyn M. Smith; Connie R. Smith; and Jeenie D. Halander, Additional Cross-claim Defendants.

COONRADT CONSTRUCTION COMPANY, Third–Party Plaintiff,

v.

CCI MECHANICAL, INC. dba CCI Service; Kay L. Walker; Lawrence A. McElliot; and Thomas F. Wilkinson, Third–Party Defendants.

No. 900642–CA.

Court of Appeals of Utah.

March 2, 1992.

Thomas A. Duffin, Bruce L. Dibb, and Hans M. Scheffler, Salt Lake City, for appellant Coonradt Const. Co.

L. Benson Mabey, Salt Lake City, for appellee Smith, Halander & Smith Associates.

Theodore Boyer, Salt Lake City, for appellee American Sav. & Loan Ass'n.

Before BILLINGS, Associate P.J., and BENCH and RUSSON, JJ.

## OPINION

BILLINGS, Associate Presiding Judge:

Coonradt Construction Company (Coonradt) appeals from a judgment concluding Coonradt did not file its mechanic's lien timely and, therefore, the lien is invalid. We reverse and remand.

## FACTS

Walker, McElliot, Wilkinson & Associates (WMW) purchased the GSA Photo Lab Building (Photo Lab) in 1984 from appellee Smith, Halander & Smith Associates (SHS).[1]

On February 24, 1987, WMW entered into a contract with the tenant, United States of America, General Services Administration (GSA), under which GSA agreed to pay WMW $99,997.00 to make certain improvements to the Photo Lab by April 17, 1987. At the same time, WMW contracted with appellant Coonradt, a general contractor, to make the improvements required under WMW's contract with GSA.

On April 29, 1987 and May 1, 1987, GSA representatives inspected the improvements to the Photo Lab and determined there were four minor items remaining to be completed: (1) poor caulking on a corner of one of the rooms needed to be reapplied for a smooth, uniform appearance; (2) the placement and leveling of one of the rooftop air conditioning units was not a good long-term solution and needed to be replaced; (3) an air test and balance report was needed; and (4) an air condenser pipe penetrating through the roof needed a weatherproof seal.

On May 14, 1987, Coonradt sealed the air condenser pipe penetrating through the roof with tar. This task was completed in a short time at a cost of no more than $1.00. A subcontractor adjusted the computer room doors and installed weather stripping around them on May 15, 1987. This work took two hours, at a billing rate of $13.49 per hour. Finally, on June 29, 1987, Coonradt installed non-skid pads and a threshold piece on the computer room ramp. The parties dispute whether Coonradt repaired the support for the rooftop air conditioner. There is no evidence in the record that Coonradt ever provided the air test and balance report.

On May 4, 1987, WMW sent an invoice to GSA, requesting the full contract price. GSA began preparing its payment voucher for the full contract price by at least May 18, 1987 and obtained approval from all necessary officials by no later than May 28, 1987. A memo to GSA's file dated May 20, 1987 acknowledges "4 very minor 'punch list' work items" but "certif[ies] that all major items of work" on the contract "have been satisfactorily completed." On May 27, 1987, GSA sent a letter to WMW listing the four items to be completed and requesting that the work be performed by June 19, 1987, but thanking WMW "for a job well

---

1. WMW's purchase of the Photo Lab was secured by a deed of trust. Appellee American Savings & Loan subsequently made a loan to SHS, secured in part by SHS's assignment of its beneficial interest in WMW's deed of trust. SHS regained ownership of the Photo Lab in 1987 when WMW conveyed it by special warranty deed in lieu of foreclosure. In the present action, therefore, SHS is defending its fee title in the Photo Lab against Coonradt's attempt to foreclose its mechanic's lien. American Savings & Loan derives its interest from SHS.

done." Although GSA paid WMW in full on or about June 19, 1987, WMW did not pay Coonradt. Coonradt filed its notice of mechanic's lien against the Photo Lab on August 19, 1987. On August 24, 1987, WMW paid Coonradt $30,000.00.

The trial court held Coonradt's lien invalid because Coonradt did not file its notice of lien within 100 days of the completion of the contract. The trial court concluded that work on the Photo Lab was substantially completed on or before May 10, 1987, and that subsequent work was insubstantial, trivial, and could not be used to extend the statutory lien filing period.

On appeal, Coonradt claims the trial court committed reversible error by applying the wrong legal standard in determining its lien was untimely filed.

### TIMELINESS OF FILING OF MECHANIC'S LIEN NOTICE

■ Coonradt urges this court to reverse the trial court's invalidation of its lien because of the remedial function of mechanic's lien statutes and the accompanying principle that such statutes should be broadly interpreted. It is well settled that " '[t]he purpose of the mechanic's lien act is remedial in nature and seeks to provide protection to laborers and materialmen who have added directly to the value of the property of another by their materials or labor.' " *Projects Unlimited, Inc. v. Copper State Thrift & Loan Co.*, 798 P.2d 738, 743 (Utah 1990) (quoting *Calder Bros. Co. v. Anderson*, 652 P.2d 922, 924 (Utah 1982)); *accord Butterfield Lumber, Inc. v. Peterson Mortgage Corp.*, 815 P.2d 1330, 1334 (Utah App.1991). We liberally construe lien statutes to implement their protective purpose. *See AAA Fencing Co. v. Raintree Dev. and Energy Co.*, 714 P.2d 289, 291 (Utah 1986); *Butterfield Lumber,*

815 P.2d at 1334. However, in order to claim the benefits of the mechanic's lien statutes, Coonradt has the burden of proving compliance with the statutory requirements, including timeliness of filing notice. *See Projects Unlimited*, 798 P.2d at 743; *Govert Copier Painting v. Van Leeuwen*, 801 P.2d 163, 172 (Utah App.1990).

■ Utah Code Ann. § 38–1–7 specifies the time period in which Coonradt, as an original contractor, must file a notice of mechanic's lien.

(1) Every original contractor *within 100 days after the completion of his contract,* and except as provided in this section, every person other than the original contractor who claims the benefit of this chapter within 80 days after furnishing the last material or performing the last labor for or on any land, building, improvement, or structure shall file for record with the county recorder of the county in which the property, or some part of the property, is situated, a written notice to hold and claim a lien.

Utah Code Ann. § 38–1–7 (Supp.1987) (emphasis added). In interpreting this statutory filing requirement, Utah courts have articulated a two-prong test. A contract is "completed" and the 100–day filing period begins to run when the work has been "substantially completed," leaving only minor or trivial work to be accomplished, *see Wilcox v. Cloward*, 88 Utah 503, 56 P.2d 1, 6–7 (1936), and "has been accepted by the owner." *Carlisle v. Cox*, 29 Utah 2d 136, 506 P.2d 60, 62 (1973).[2]

In *Wilcox,* the court explained the first part of the test as one of deciding whether the disputed work "was a substantial continuation of the work on the contract or a minor or trivial adjustment or the remedying of trivial imperfections." *Wilcox,* 56

---

**2.** As amended, effective April 24, 1989, section 38–1–7 currently states:

(1) Each contractor or other person who claims the benefit of this chapter within 80 days *after substantial completion of the project or improvement* shall file for record with the county recorder of the county in which the property, or some part of the property, is

situated, a written notice to hold and claim a lien.

Utah Code Ann. § 38–1–7 (Supp.1991) (emphasis added). The 1989 amendment simply recognized prior case law which equated "completion" under the prior statutory language with "substantial completion."

P.2d at 6.[3] Another way to articulate this inquiry is whether "the imperfections in the performance of the work [are] so trivial in character as to permit the contractor to recover for substantial performance[.]" *Id.* at 7; *accord Carlisle,* 506 P.2d at 62.[4]

■ The decision as to whether the work at issue is substantial or trivial is fact sensitive, and, thus, we defer to the trial court's characterization of the nature and extent of the work on the Photo Lab. *See Wilcox,* 56 P.2d at 8.[5]

■ The parties gave conflicting accounts of the scope of the work performed after May 11, 1987. After a three-day trial, however, the district judge set forth detailed findings of fact resolving the factual disputes concerning the completion of the work on the Photo Lab:

On or about April 17, 1987, the required completion date set forth in the contract between WMW and GSA, the work was in fact substantially completed.

On April 29, 1987 and May 1, 1987, inspections of the work were made by GSA representatives, who determined there were four (4) very minor punch list items remaining for completion: (i) the caulking on a corner of one of the rooms was poorly applied and needed to be reapplied for smooth, uniform appearance; (ii) one of the rooftop air conditioning units was set on $2 \times 4$ blocking to level the unit, this was deemed not to be a good long-term solution; (iii) provide an air test and balance report; and (iv) seal air condenser pipe penetration through roof to be weather tight.

The only work performed on or after May 11, 1987, was the following:

(a) On May 14, 1987, George Coonradt sealed one (1) air condenser pipe penetration through the roof by applying tar to the penetration, which cost no more than $1.00, and this task took little time to perform.

(b) Readjustment of computer room doors and installation of weather stripping around such doors on May 15, 1987. Such work was performed by an employee of Interiors who spent a total of two (2) hours, including travel time and performing such work at a billing rate of $13.49 per hour.

---

**3.** *See also Carlisle,* 506 P.2d at 62 ("when a building has been substantially completed and has been accepted by the owner, the contractor may not thereafter at his own instance perform some minor omitted part of the contract and thereby extend the period for filing the lien"); *Palombi v. D & C Builders,* 22 Utah 2d 297, 452 P.2d 325, 327 (1969) ("The work done or material furnished must be something substantial in connection with the performance of the contract and this is not satisfied by trivialities which may be used as a pretext to extend the lien period."); *Nagle v. Club Fontainbleu,* 17 Utah 2d 125, 405 P.2d 346, 349 (1965) ("No one questions that [work to extend the lien filing period] must be something substantial in connection with performance of the contract as *opposed to something merely minor or trivial* which might be used as a pretext to extend the lien period."); *Daniels v. Deseret Fed. Sav. & Loan Ass'n,* 771 P.2d 1100, 1102 (Utah App.) ("Completion is marked by the end of a related series of tasks required for substantial completion of the contract."), *cert. denied,* 781 P.2d 878 (Utah 1989) and 783 P.2d 53 (Utah 1989).

**4.** In answering this question, Utah courts have considered the disputed work in detail. *See, e.g., Carlisle,* 506 P.2d at 62–63 (the omission of one heat register, valued at $2.26, in a subcontract exceeding $500 was "so trivial that the landowner would not have been able to defend

successfully an action for payment on the ground that the contract had not been fully performed"); *Palombi,* 452 P.2d at 327 (work consisting of obtaining a building permit and removing building materials from the work site is insufficient to extend the filing period); *Totorica v. Thomas,* 16 Utah 2d 175, 397 P.2d 984, 986 (1965) (installing an aluminum window frame, plastering, and painting a carport "were all necessary items which had to be done if the contract was to be substantially completed"); *Wilcox,* 56 P.2d at 7 (repairing a roof with 100 shingles and installing a boiler is work which would "permit an owner successfully to resist payment until it was performed"); *Daniels,* 771 P.2d at 1102 (one day's work in repairing frozen water pipes did not "substantially relate to the performance of the contract").

**5.** *See also Carlisle,* 506 P.2d at 62–63 ("Although generally it is for the trier of fact to determine whether the additional work was trivial or minor," this question "may be determined as a matter of law" when there is evidence of the value and importance of the item in relation to the total contract); *Palombi,* 452 P.2d at 327 ("Whether . . . what was done amounts to something substantial is a question of fact to be determined by the trial court.").

(c) On June 29, 1987, George Coonradt installed non-skid pads and a threshold piece on the ramp to the computer room, which was not specifically identified as a requirement of the contract but was in reasonable furtherance of contract completion, with little time being spent in such performance.

The work that was performed on or after May 11, 1987, was in reasonable furtherance of the contract but was insubstantial and minor and trivial in nature.

Based upon these findings of fact, the court concluded, as a matter of law, that "[t]he work was substantially performed and completed on or before May 10, 1987, and work thereafter performed was insubstantial and trivial; and accordingly such work may not be used to extend the statutory lien filing period."

We do not find fault with the court's ruling that work performed on or after May 11, 1989, although in furtherance of the contract and in good faith, was trivial and that the project had been substantially completed before that date. The dollar value of the work performed after May 11 was de minimis when compared to the total contract price of $95,500.00.[6] Furthermore, it is inconsistent for Coonradt to contend that its project was incomplete on May 11 when it had applied for full payment almost a month earlier.

However, the trial court did not consider the second part of the test, whether Coonradt's work had been "accepted" by the owner.[7] Coonradt contends that, even if the work it performed after May 11, 1987 is trivial, its notice of lien may date from the time it completed this work because it was done at the property owner's request and, thus, the owner had not accepted the contract as complete.[8]

In an early case, the Utah Supreme Court stated that "[t]he element of work done at the owner's request has had considerable weight in working an extension of time." *Wilcox,* 56 P.2d at 7. When work is done at the owner's request, "the question of bad faith on the part of the lien claimant is eliminated." *Id.* at 8. In *Wilcox,* a homeowner appealed the trial court's finding that lien notices filed by two subcontractors who had worked on her home were timely. The Utah Supreme Court agreed with the trial court that both liens were timely because the repairs were "of a substantial nature." *Id.* Therefore, the court did not need to reach the issue of whether minor tasks done at an owner's request will toll the lien notice filing period. The court stated:

> In this case it is not necessary to determine whether the principle that if the owner requested the work or materials to be done to remedy a defect, it would in all cases extend the time for filing the lien regardless of how minor or trivial was the labor done or materials furnished in order to make the requested repairs, because we believe that the finding of the trial court that the last work done by [the subcontractors] ... is of a substantial nature.

*Id.*

Cases cited in *Wilcox* and from other jurisdictions, however, indicate the key inquiry in whether work performed at the request of the property owner will extend the statutory period is whether the owner has accepted the contract work as completed.

In *Curtis v. McCarthy,* 53 Colo. 284, 125 P. 109 (1912), a case referenced in *Wilcox,* a homeowner claimed a plumbing subcontractor's lien was invalid because it was not

---

**6.** *See Carlisle,* 506 P.2d at 62 (the value of one heat register which "represented .0011385 per cent of the value of the subcontract" was not substantial).

**7.** Although WMW owned the Photo Lab at the time of Coonradt's contract, the Photo Lab was remodeled for the benefit of GSA, WMW's tenant. Because GSA requested Coonradt to perform the additional items on the "punch list,"

GSA's acceptance of Coonradt's work is significant.

**8.** On appeal, SHS contends we should not reach this "estoppel" argument as it was not adequately raised at trial. However, our review of the record reveals that Coonradt raised the issue of when GSA accepted Coonradt's work on the Photo Lab in its memoranda prepared at the time of trial.

timely filed. The owner refused to accept the plumber's work until October 15, the date on which the plumber replaced a defective sink back and completed "other odds and ends" specifically "at the demand of the contractor and the agent of the owner." *Id.*, 125 P. at 110. The plumber filed his lien within a month thereafter. *Id.* Upholding the plumber's lien as timely, the Supreme Court of Colorado stated the homeowner "cannot be heard to say that this work, done at the request of his agent in order to complete the contract, was not a continuation of the previous work done under the same contract." *Id.*

The Court of Appeals of Indiana reached a similar conclusion more recently in *Gooch v. Hiatt,* 166 Ind.App. 521, 337 N.E.2d 585 (1975). In *Gooch,* a property owner hired an electrical contractor to install heating, lighting, and air conditioning equipment in a building then under construction. Although the building was finished by November, 1967, the furnaces the contractor installed did not function properly. When the contractor requested payment, the owner "refused to make payment for any of the work until such defect and other alleged defects were corrected." *Id.*, 337 N.E.2d at 587. "In response to one of many complaints about the operation of the furnaces," the contractor performed additional work in July, 1968. *Id.* The contractor filed his lien in September, 1968. The property owner argued the lien was untimely since the building was completed and the furnaces operable in November, 1967, but the trial court ruled in favor of the contractor.

On appeal, the court affirmed, stating: "[W]here a property owner will not accept lienable work as completed and refuses to pay for the same until satisfactory corrective work is done, such property owner is estopped from asserting that the contracted work had been completed as of an earlier date." *Id.* at 588. The court reasoned:

> Inasmuch as the owner had not yet paid for any of the work at the time of such complaint and additional work, and subsequently stated that the work was unacceptable and that payment would be withheld until corrective action was taken, he must be estopped from now asserting that the job was completed prior to such additional work.

*Id.*[9]

Because we have determined that the additional work Coonradt performed at GSA's request after May 11, 1987 was trivial, the date Coonradt's work was accepted as complete is critical in completing our analysis of the timeliness of Coonradt's

---

**9.** *See also Wooldridge Const. Co. v. First Nat'l Bank of Arizona,* 130 Ariz. 86, 634 P.2d 13, 15 (Ct.App.1981) (court finds lien valid where "work was done pursuant to the owner's request" and the "owner had retained a percentage of the contract price and conditioned payment of that fund upon prompt and satisfactory completion of the work"); *Hubbard v. Lee,* 10 Cal.App. 477, 102 P. 528, 530 (1909) (court finds lien valid where "remedying ... trivial imperfections to the satisfaction of [the] owner" had to be done before "the owner would accept the same"); *Jones v. Julian,* 56 Del. 587, 195 A.2d 388, 389–90 (1963) (court finds lien valid where, although work was finished in June, the owners "never accepted" it until additional work was performed in November); *Smith v. Bruning Enter., Inc.,* 424 N.E.2d 1035, 1036 (Ind.App.1981) (court finds lien valid where contractor performed extra work "at the request of" the owner because the owner "claimed the work was not complete"); *Miller Monuments, Inc. v. Asbestos Insulating & Roofing Co.,* 134 Ind.App. 48, 185 N.E.2d 533, 534 (1962) (court finds lien valid where additional work "was done with defendant Miller's knowledge and consent and pursuant to its refusal to accept and pay for the work done by plaintiff until such corrective work was completed to its satisfaction"); *Stickney v. Murdock Steel and Eng'g, Inc.,* 212 Kan. 653, 512 P.2d 339, 342 (1973) (court finds lien valid as it dates from the time the subcontractor "received word from the building owner that he then considered the subcontractor's work under the original contract to have been satisfactorily concluded"); *Eisenhut v. Steadman,* 13 Kan.App.2d 220, 767 P.2d 293, 295 (1989) (court finds lien valid where contractors' work in responding to the owner's list of needed corrections "was performed in an effort to satisfy the demands and complaints of the owner regarding the work performed under the contract"); *Rieflin v. Grafton,* 63 Wash. 387, 115 P. 851, 852 (1911) (court finds lien valid dating from replacement of defective glass because the supervising architect "condemned and refused to accept the material furnished by the appellant, notified him thereof, and demanded that it be removed from the dwelling and that other material conforming to the specifications should be substituted").

lien. However, the trial court made no findings on this issue.

■ Furthermore, the answer to this factual question is not clear from the record. WMW sent GSA an invoice requesting the full contract price for the full work under the contract as early as May 4, 1987, before Coonradt had even begun its additional work. Yet, WMW's building manager testified at trial that he instructed Mr. Coonradt to complete the "punch list" items "as quickly as possible" because failure to complete them would "most probably" have delayed GSA's payment of WMW's invoice. Such testimony suggests that GSA may not have accepted Coonradt's work until the "punch list" items were completed.

On May 18, 1987, GSA began to prepare a payment voucher for the full contract price. GSA documents dated May 20, 1987 and May 27, 1987 state that the major work has been "satisfactorily completed" and was "well done." Although GSA's payment voucher was officially approved by at least May 28, 1987, GSA did not pay the full contract amount to WMW until June 19, 1987. Therefore, the record is ambiguous as to when Coonradt's work under the contract was accepted.

Without a specific factual finding, we cannot determine when Coonradt's work was accepted as completed. This date is crucial to our determination of whether Coonradt's notice of lien was timely filed. Therefore, we reverse and remand to the trial court for further proceedings on the narrow question of when, under all the circumstances, Coonradt's work was accepted as complete. If this date was more than 100 days prior to the date Coonradt filed its notice of lien, the trial court shall confirm that Coonradt's lien is untimely. However, if the date of acceptance of the contract work as completed was less than 100 days prior to the date Coonradt filed its notice of lien, Coonradt's lien is timely.

BENCH and RUSSON, JJ., concur.