2004 UT 47

**A.K. & R. WHIPPLE PLUMBING AND HEATING, Plaintiff and Respondent,**

v.

**Thomas D. GUY and Aspen Construction, a Utah corporation, Defendants and Petitioners.**

**No. 20020495.**

Supreme Court of Utah.

June 11, 2004.

Steven B. Wall, Salt Lake City, for plaintiff.

Joseph M. Chambers, Logan, for defendants.

DURHAM, Chief Justice:

## INTRODUCTION

¶ 1 Thomas D. Guy (Guy) and Aspen Construction (Aspen) were defendants in a mechanic's lien foreclosure action brought by A.K. & R. Whipple Plumbing and Heating (Whipple). We granted Guy and Aspen's petition for certiorari review of the court of appeals' decision affirming the trial court's award of no attorney fees in connection with this case. They urge us to find that the trial court's application of a so-called "flexible and reasoned approach" to determining the "successful party" pursuant to section 38–1–18 of the Utah Code wrongly led the trial court to find that Guy and Aspen were not the "successful parties" in this dispute. Because of the trial court's reasoning, it found that Guy and Aspen were not entitled to attorney fees, even though they won a net judgment of $527 and Whipple did not win everything it sought through its mechanic's lien. We affirm.

## BACKGROUND

¶ 2 Guy, a homeowner, hired Aspen, a general contractor, to coordinate construction projects on three different properties.[1] Aspen hired Whipple to perform heating, ventilation and air conditioning (HVAC) work, plumbing work, and other services on the properties. Problems arose with the HVAC system on one of the properties, known as the Thayne's Canyon property. Because of these problems, Aspen terminated Whipple's services and refused further payment until Whipple fixed the HVAC system. Whipple then filed mechanic's lien foreclosure actions on all three properties, and Aspen counterclaimed for damages based on the defective HVAC system. The three mechanic's lien actions were consolidated for trial.

¶ 3 Two of the lien foreclosure actions are not at issue in this case.[2] Rather, it is the

---

1. For the sake of simplicity and consistency with the lower court decisions in this case, our decision refers to Aspen alone when discussing defendants and their arguments.

2. Whipple prevailed on these two lien foreclosure actions and the trial court ruled that Whipple, as the "successful party" pursuant to section 38–1–18 of the Utah Code, was entitled to the

third, largest mechanic's lien for Whipple's work on the Thayne's Canyon property that is at issue. Although the exact amount of this lien is disputed, we have determined that it was $30,641.35.[3] Aspen, in turn, claimed $25,000 in damages based on Whipple's allegedly negligent HVAC work on the Thayne's Canyon property. *Whipple II*, 2002 UT App 73 at ¶ 20, 47 P.3d 92. Based on that $25,000 counterclaim, the trial court awarded Aspen a $7,000 "offset for damages based on [Whipple's] deficient work." After calculating the consequences of the parties' respective wins and losses on their competing claims, the trial court awarded a net judgment to Aspen in the amount of $527. *Id.*

¶ 4 Notwithstanding its finding that Aspen should receive $527, the trial court held that Aspen was not a "successful party" pursuant to section 38–1–18 of the Utah Code. The trial court found, and the court of appeals agreed, that "where the net recovery is only $527, ... this is essentially a 'draw.'" *Id.* (internal quotation omitted). The court of appeals in *Whipple II* based its decision on the "flexible and reasoned" approach set forth in *Mountain States Broadcasting Co. v. Neale*, 783 P.2d 551, 557 (Utah Ct.App.1989) (mem. decision on petition for reh'g) (*Mountain States II*) (internal quotation omitted), and followed in *Occidental/Nebraska Federal Savings Bank v. Mehr*, 791 P.2d 217 (Utah Ct.App.1990). *See Whipple II*, 2002 UT App 73 at ¶¶ 15–19, 47 P.3d 92.

¶ 5 Aspen argues that the flexible and reasoned approach is inapplicable to this case, and that instead we should interpret section 38–1–18's term "successful party" as

requiring application of a straight "net judgment" rule for determining the successful party. The net judgment rule requires the court to consider only which party recovered a net judgment, and award attorney fees to that party. *See Mountain States II*, 783 P.2d at 557–58. Because Aspen received a net judgment of $527, and Whipple failed to recover some of what it sought under its Thayne's Canyon mechanic's lien, Aspen argues that it was the "successful party" with respect to that lien.

## STANDARD OF REVIEW

■ ¶ 6 When reviewing attorney fee decisions that involve questions of law, we review for correctness. *Robertson v. Gem Ins. Co.*, 828 P.2d 496, 499 (Utah Ct.App.1992). This is also the standard we apply when construing statutes. *Platts v. Parents Helping Parents*, 947 P.2d 658, 661 (Utah 1997).

## ANALYSIS

■■ ¶ 7 Although courts have inherent equitable power to award attorney fees when justice or equity requires, *Stewart v. Utah Pub. Serv. Comm'n*, 885 P.2d 759, 782 (Utah 1994), attorney fees are typically recoverable only if an applicable statute or contract so provides. *Id.; Mountain States Broad. Co. v. Neale*, 776 P.2d 643, 648 (Utah Ct.App. 1989) (*Mountain States I*), *clarified by Mountain States Broad. Co. v. Neale*, 783 P.2d 551 (Utah Ct.App.1989) (mem. decision on petition for reh'g) (*Mountain States II*). Section 38–1–18 of the Utah Code states:

attorney fees allocable to these liens. Guy and Aspen did not seek review of these judgments, and they are not at issue in this case.

**3.** The trial court and the court of appeals both believed that $13,000 was the amount of the lien, once $17,000 already paid by Aspen was taken into account. *A.K. & R. Whipple Plumbing & Heating v. Guy*, 2002 UT App 73, ¶ 20, 47 P.3d 92 (*Whipple II*). Aspen protests that this is a mathematical error, and that the actual amount of Whipple's lien was $30,641.35. In response, Whipple argues for yet another figure as the amount of its Thayne's Canyon lien: $23,780.55. Whipple bases this argument on its unsupported assertion in its brief that the $6,660.80 discrepancy between Whipple's figure and Aspen's figure stems from Aspen's erroneous inclusion of a

claim for relocating a municipal water line that was never part of the Thayne's Canyon lien.

Based upon the parties' apparent agreement that the court of appeals and the trial court were mistaken, and based upon our own review of the record and the exhibits attached to Aspen's briefs, we conclude that Whipple's mechanic's lien sought more than the $13,000 figure that the courts below used. Furthermore, because Whipple has failed to point us to a part of the record demonstrating that the municipal water line relocation claim was not part of the Thayne's Canyon lien or that Whipple had raised this argument below, we use Aspen's figure of $30,641.35. We point out, however, that given the analysis that follows in this opinion, the $6,660.80 discrepancy does not affect the outcome of the case.

Except as provided in Section 38–11–107, in any action brought to enforce any lien under this chapter the successful party shall be entitled to recover a reasonable attorneys' fee, to be fixed by the court, which shall be taxed as costs in the action.

Utah Code Ann. § 38–1–18 (1997).[4] By its use of the word "shall," the provision mandates that the successful party be allowed to recover reasonable attorney fees. *Richards v. Sec. Pac. Nat'l Bank*, 849 P.2d 606, 612 (Utah Ct.App.1993). Thus, courts do not have discretion to decide whether to award reasonable attorney fees to the "successful party." *Reeves v. Steinfeldt*, 915 P.2d 1073, 1079 (Utah Ct.App.1996). The court of appeals has correctly stated that a "successful party includes one who successfully enforces or defends against a lien action." *Kurth v. Wiarda*, 1999 UT App 335, ¶ 9, 991 P.2d 1113.

¶ 8 The instant case requires us to decide whether section 38–1–18's use of the term "successful party" precludes a trial court from finding that, under circumstances such as those in this case, neither party was actually "successful," and therefore neither party is entitled to attorney fees. Reasoning that the term "successful party" is essentially synonymous with the term "prevailing party," *Whipple II*, 2002 UT App 73 at ¶¶ 11–12, 47 P.3d 92, the court of appeals held that a trial court should apply a "flexible and reasoned" approach to determining which party was successful. *Id.* at ¶¶ 16, 18–19. This approach is based on the *court of appeals'* reasoning in *Mountain States II*, which was not a mechanic's lien case, but rather one involving a contractual attorney fees provision that included the term "prevailing party." *Mountain States I*, 776 P.2d at 648. The court of appeals followed the flexible and reasoned approach it announced in *Mountain States II* in the subsequent case of *Occidental/Nebraska Federal Savings Bank v. Mehr*, 791 P.2d 217 (Utah Ct.App.1990).

## I. *MOUNTAIN STATES II*

¶ 9 *Mountain States II* involved a dispute over the purchase of radio stations. *Moun-* *tain States I*, 776 P.2d at 645. The contract governing the purchase included an attorney fees provision providing, in pertinent part: "In the event of commencement of suit by either party to enforce the provisions of this Agreement, the prevailing party shall be entitled to receive attorneys' fees and costs as a court may adjudge reasonable in addition to any other relief granted." *Id.* at 648. The *Mountain States* trial court found that both sides had prevailed to some extent, so it awarded both sides their full attorney fees. *Id.* at 645. Both sides argued before the court of appeals, however, that the attorney fees provision in the purchase contract contemplated only one "prevailing party," and, predictably, each side claimed to be the prevailing party. *Id.* at 648.

¶ 10 In *Mountain States I*, the court of appeals found that there could be only one prevailing party, despite the fact that the trial judge had awarded both parties money damages for claims arising from the same transaction. *Id.* Furthermore, the court of appeals held that prevailing party status was determined by the identity of the party receiving the net judgment. *Id.* at 649. The court acknowledged, however, that

[t]he determination of a "prevailing party" becomes even more complicated in cases involving multiple claims and parties ... and where the ultimate award of money damages does not adequately represent the actual success of the parties under the peculiar posture of the case. These cases demonstrate the need for a flexible and reasoned approach to deciding in particular cases who actually is *the* prevailing party.

*Id.* at 649 n. 7 (citations omitted).

¶ 11 *Mountain States II* was the court of appeals' memorandum decision on a petition for rehearing filed by Mountain States. 783 P.2d at 557. Mountain States had not received a net judgment in *Mountain States I*, and it was therefore not the "prevailing party" under the court's initial application of the

---

4. While this is the version of section 38–1–18 that is controlling for the purposes of this case, the legislature amended it in 2001 primarily by adding two additional subsections. *See* Utah Code Ann. § 38–1–18 (2001).

net judgment rule. Mountain States argued that it was nevertheless the real prevailing party because throughout the trial it had claimed that it was entitled to an offset, and it ultimately did prove its entitlement to the offset. *Id.* Furthermore, Mountain States argued that its opponent—a party named NBA—was the non-prevailing party, because NBA had contended Mountain States deserved no offset, but an offset was nonetheless awarded. *Id.* The appellate court cogently explained why a strict application of an unmodified net judgment rule could create absurd results:

> Mountain States suggests that the absurdity of our reliance on the "net judgment" rule in a case like this is shown by the fact that if it had proven offsets totaling even $1.00 less than the amount otherwise due under the note, despite a near-total victory for Mountain States the net judgment would still be in favor of NBA and strict application of the net judgment rule would leave NBA the prevailing party. Mountain States' point is well-taken. On the other hand, carrying its own position to an equivalent extreme works an equally untenable result: If Mountain States had shown its entitlement to an offset of only $1.00, under its view it would be the prevailing party since it had claimed an offset in an amount to be proved and proved one.

*Id.* Having thus explained why a simplistic, mechanical application of either the net judgment rule or Mountain States' approach could create absurd results, the *Mountain States II* court emphasized

> the need for a flexible and reasoned approach to deciding in particular cases who actually is *the* prevailing party. . . . [N]othing in our opinion should be taken to suggest that the net judgment rule can be mechanically applied in all cases, although it will usually be at least a good starting point.

*Id.* (internal quotation omitted). Implicit in this ruling is the notion that courts should not ignore common sense when deciding which party prevailed. The court therefore used the net judgment rule as a starting point, and considered the question of which

party had prevailed from "two additional perspectives." *Id.* at 558.

¶ 12 The two additional perspectives the court considered both focused on determining "comparative victory" rather than simply which party won the net judgment. *Id.* The court explained that the main dispute between the parties centered on a $30,000 payment. *Id.* NBA argued that Mountain States owed NBA the entire $30,000, while Mountain States argued that it was entitled to at least $30,000 in offsets, and therefore owed NBA nothing. *Id.* "Total victory for Mountain States would have been its proving entitlement to all $30,000. Total victory for NBA would have been its proving Mountain States was entitled to nothing. A 'draw' would have been a decision dividing the $30,000 equally." *Id.* As it turned out, however, NBA won four times the amount that Mountain States won. *Id.*

¶ 13 The other perspective the court used to determine which party prevailed focused on the party that won a greater percentage of the amount it had claimed in damages or offsets. Thus, the court explained that depending on how NBA's punitive damage claim was calculated, NBA recovered between thirty-three percent (33%) and sixty percent (60%) of the damages it had sought. *Id.* Mountain States, on the other hand, won only nine percent (9%) of what it had sought. *Id.* Viewing the outcome of the trial from these two vantage points, the court found that NBA won an overall victory, and was therefore the "prevailing party." *Id.*

¶ 14 We believe that *Mountain States II's* common sense "flexible and reasoned" approach was correctly applied to the interpretation of contractual "prevailing party" language. *Occidental/Nebraska* strongly supports this conclusion. That case, unlike *Mountain States II,* involved a statutory "prevailing party" attorney fees provision. *See* 791 P.2d at 221 (citing Utah Code Ann. § 57-1-32 (1986)). The plaintiff claimed $600,000 in damages, but only recovered $7,300—a sum that the defendants had stipulated to owing early in the litigation. *Id.* at 222. Based on the flexible and reasoned approach, the court was able to find that

the defendants, not the plaintiff, were the prevailing party. *Id.*

¶ 15 The instant case involves the term "successful party" as used in the context of a mechanic's lien action, rather than the "prevailing party" language construed in *Mountain States II.* We therefore examine whether *Mountain States II's* flexible and reasoned approach should be applied to cases involving the "successful party" term in section 38–1–18 of the Utah Code.

## II. CONSISTENCY OF THE "FLEXIBLE AND REASONED" APPROACH WITH UTAH CODE ANNOTATED SECTION 38–1–18

¶ 16 Section 38–1–18 of the Utah Code is a lien statute, while *Mountain States II* concerned an attorney fees provision in a contract. Consequently, we should adopt the "flexible and reasoned" approach from *Mountain States II* only if it is consistent with the purposes of section 38–1–18.

¶ 17 As a preliminary matter, we note that the legislature has not defined the term "successful party" as it is used in section 38–1–18. *See* Utah Code Ann. §§ 38–1–1 to –29 (2001 & Supp.2003). We can find no case law construing the term "successful party" in light of circumstances like those in this case, where both parties have won and lost some of their competing claims arising from the same underlying facts.[5] Aspen has cited several cases dealing with section 38–1–18, but none of them actually support its position.

¶ 18 A representative example is Aspen's repeated emphasis on our decision in *Palombi v. D & C Builders,* 22 Utah 2d 297, 452 P.2d 325, 327–28 (1969). Aspen asserts that

*Palombi* forecloses the result Whipple seeks in this case. Aspen's argument, however, is unsupported by the language of *Palombi,* which focuses only on the issue of whether one who successfully defends against a mechanic's lien could be a successful party under the statute: "the statute confers the benefit [of receiving attorney fees] not only on the one who asserts the lien but upon the 'successful party[,]' in this instance the plaintiff, who defended against the lien." *Id.* at 327. *Palombi* says nothing about whether a court can find that there was no "successful party" in a case where both parties won and lost on parts of their competing claims, while one party received a comparatively small net judgment. The same is also true of the other cases Aspen cites.

¶ 19 What the case law does reveal is that Utah appellate courts have routinely used the terms "successful party" and "prevailing party" interchangeably. *See, e.g., Cobabe v. Crawford,* 780 P.2d 834, 835 n. 1 (Utah Ct. App.1989). Likewise, *Black's Law Dictionary* treats the terms "successful party" and "prevailing party" as synonyms. *Whipple II,* 2002 UT App 73 at ¶ 11, 47 P.3d 92 (citing *Black's Law Dictionary* 1145 (7th ed.1999)). Significantly, both this court and the court of appeals have used the terms interchangeably even in the context of mechanic's lien cases. *See ProMax Dev. Corp. v. Raile,* 2000 UT 4, 998 P.2d 254; *J.V. Hatch Constr., Inc. v. Kampros,* 971 P.2d 8 (Utah Ct.App.1998). Thus, we are satisfied that *Mountain States II's* "flexible and reasoned" approach should not be unavailable in this case simply by virtue of the fact that it is based on the term "prevailing party" rather than "successful party."

---

5. We emphasize, however, that a court should look only to the parties' claims and counterclaims relating directly to the specific mechanic's lien at issue. Stated another way, when assessing which party is the "successful party" under the mechanic's lien statute, a court should confine itself to consideration of only those claims relating directly to both the particular property on which the mechanic's lien action is asserted and the particular work on which the mechanic's lien action is based.

In this case, because Aspen's appeal concerned only Whipple's mechanic's lien action with respect to the Thayne's Canyon property, we con-

fine our analysis to those Aspen counterclaims relating directly to the mechanic's lien action on that property. However, if Aspen's appeal had concerned Whipple's other two foreclosure actions or involved counterclaims not directly related to the work that was the basis for Whipple's mechanic's lien claim on the Thayne's Canyon property, application of the flexible and reasoned approach would remain the same. Any recovery by Aspen with respect to other properties or other unrelated work on the Thayne's Canyon property would be irrelevant in determining which party was the "successful party" under the mechanic's lien statute.

¶ 20 Aspen concedes that Utah appellate courts have often used the terms "successful party" and "prevailing party" interchangeably. Aspen argues, however, that even when using the terms interchangeably, we have always referred to and applied a historical legal standard in which no draw was possible. This is one of Aspen's key arguments, because if true, it means that we have historically employed a legal standard that permits no finding of a draw even in cases with no clear winner. The existence of such precedent, in light of stare decisis, would strongly militate against affirming the court of appeals in this case.

¶ 21 Aspen cites two cases in support of this argument: *ProMax Development* and *J.V. Hatch Construction.* We have examined both cases, and conclude that despite Aspen's assertions, the courts in both cases had no reason to consider the issue of whether section 38–1–18 permits a court to find a draw, with no "successful party" entitled to attorney fees. Rather, the main issue in *ProMax Development* was whether there had been sufficient evidence of an accord and satisfaction to justify the defendants' victory in the mechanic's lien foreclosure action. 2000 UT 4 at ¶ 17, 998 P.2d 254. The defendants apparently had no counterclaims in the case, *id.* at ¶ 2–9, and won a complete and unequivocal victory on the accord and satisfaction issue. *Id.* at ¶ 33. Thus, far from thoughtfully applying some "historical legal standard" that permits no finding of a draw under appropriate circumstances, the court had no reason to consider the issue at all.

¶ 22 The same is true with *J.V. Hatch Construction.* The main issue there was whether a successful mechanic's lien claimant's prima facie case for attorney fees required proof that the claimant had properly mailed notice of the lien to the defendant. 971 P.2d at 11–12. The court held that such proof was not required as part of the claimant's case for attorney fees, and that instead it was the defendant's burden to show that attorney fees were precluded by the lien claimant's failure to properly mail notice of the lien. *Id.* As in *ProMax Development,* but unlike the instant case, there was no

indication that each party had sued the other and partially won and lost. The identity of the "successful" or "prevailing" party was not remotely at issue. Our review of these and other cases confirms that we have never previously applied any standard that precludes a finding of a draw in a situation like the one before us.

¶ 23 The next issue is whether the flexible and reasoned approach is consistent with section 38–1–18 of the Utah Code. Aspen argues that it is not consistent because *Mountain States II* was based on a contractual "prevailing party" attorney fees provision, while mechanic's lien cases such as this one involve a "very specific statutory framework mandated by the legislature." While this is a distinction, Aspen provides no meaningful analysis explaining why the flexible and reasoned approach is incompatible with the statutory framework. The court of appeals, on the other hand, concluded that "application of our 'prevailing party' jurisprudence to section 38–1–18 does not detract from its objective." *Whipple II,* 2002 UT App 73, ¶ 12, 47 P.3d 92. We agree.

¶ 24 If Utah's mechanic's lien is a "statutory creature[ ]," *AAA Fencing Co. v. Raintree Dev. & Energy Co.,* 714 P.2d 289, 291 (Utah 1986) (per curiam), then section 38–1–18 is one of that creature's sharper claws. The purpose of the mechanic's lien is to protect those whose labor or materials have enhanced the value of property. *Id.* Section 38–1–18 strengthens that protection by ensuring that someone who successfully uses a mechanic's lien to enforce a payment obligation for such enhancement will not ultimately bear the legal costs of that enforcement action. It also functions as a penalty for one who wrongly fails to pay for enhancement to his property. Simultaneously, it has the effect of discouraging abuse of the lien process by creating a strong disincentive for a would—be litigant to wrongly inflict a mechanic's lien on a property owner whose property was not actually enhanced. *See also* Utah Code Ann. § 38–1–25 (2001) ("Abuse of lien right-Penalty").[6] Theoreti-

6. This section of the Utah Code provides:

(1) Any person entitled to record or file a lien

cally, therefore, it should reduce the number of mechanic's liens that are filed, and encourage property owners against whom such liens are rightfully filed to keep attorney fees low by settling quickly. At the same time, section 38–1–18 should also discourage the filing of frivolous and unsupportable mechanic's liens, because a mechanic's lien plaintiff who is not successful must pay the defendant's attorney fees.

¶ 25 The question, then, is whether the flexible and reasoned approach to determining which—if any—party was successful defeats the self-evident purposes of section 38–1–18. We believe that it furthers, rather than hinders, the statute's objectives. It ensures that only parties that are *genuinely* "successful" according to the trial court's common sense logic will be able to extract their attorney fees from their opponents. Aspen seeks a rigid rule that would deprive trial courts of their power to apply their discretion and common sense to this issue, and would require a trial court to award fees to whichever party emerged with a net judgment, no matter how insignificant. Such a result is not required by the statute.

 ¶ 26 Instead, we agree with the court of appeals, in this case and *Mountain States II*, that rigid application of the net judgment rule can result in unreasonable awards of attorney fees. We also agree that trial courts should, as permitted by statute and other applicable law, use their common sense in deciding whether a party was "successful" in bringing or defending against a mechanic's lien enforcement action. *See Whipple II*, 2002 UT App 73 at ¶ 19, 47 P.3d 92. This approach requires not only consideration of the significance of the net judgment in the case, but also "looking at the amounts actually sought and then balancing them proportionally with what was recovered." *Id.* at

¶ 19 (citing *Stichting Mayflower v. Newpark Res.*, 917 F.2d 1239, 1248 n. 9 (10th Cir.1990) ("We think the district court should attempt to weigh the relative success of the parties['] . . . claims if it can find a reasoned basis for doing so.")). Depending on the unique circumstances of a given case, it will often—but not necessarily always—make sense for the trial court to analyze the issue using the same kinds of "additional perspectives" that the *Mountain States II* court employed. Our review of the case law persuades us that in the great majority of cases, the flexible and reasoned approach will identify a clearly successful party that is genuinely entitled to receive attorney fees. However, because we are adopting a "flexible and reasoned" approach, we leave it to the trial courts' discretion to decide which additional common sense perspectives are most appropriate to consider in future cases.

## III. APPLICATION OF THE FLEXIBLE AND REASONED APPROACH TO THIS CASE

 ¶ 27 Having decided that it is appropriate to apply the flexible and reasoned approach to the instant case, we turn our attention to whether the court of appeals correctly affirmed the trial court's application of that approach. The trial court explained its primary reason for awarding no attorney fees as follows:

The Court feels where plaintiff was claiming roughly $13,000 on the Thayne's Canyon property (allowing for the $17,000 already paid), and where defendant was claiming roughly $25,000 in damages for the negligence of the plaintiff, and further where the net recovery is only $527, the Court is of the opinion that this is essentially a "draw" and no attorney's fees

under Section 38–1–3 is guilty of a class B misdemeanor who intentionally causes a claim of lien against any property, which contains a greater demand than the sum due to be recorded or filed:
 (a) with the intent to cloud the title;
 (b) to exact from the owner or person liable by means of the excessive claim of lien more than is due; or
 (c) to procure any unjustified advantage or benefit.

(2) In addition to any criminal penalties under Subsection (1), a person who violates Subsection (1) is liable to the owner of the property or an original contractor or subcontractor who is affected by the lien for the greater of:
 (a) twice the amount by which the wrongful lien exceeds the amount actually due; or
 (b) the actual damages incurred by the owner of the property.
Utah Code Ann. § 38–1–25 (2001).

should be awarded. The Appellate Courts in our state have acknowledged that the "net recovery rule" is essentially a starting point and need not be applied strictly under all circumstances.

¶ 28 Although lacking in detail, the trial court's explanation of its rationale is adequate because it demonstrates that the court correctly considered common sense factors in addition to the net judgment. It is apparent from the trial court's reasoning that it believed Aspen's net recovery of only two percent (2%) of its claimed damages was insufficient to make it the "successful party."

¶ 29 As noted above, Aspen insists that both the trial court and the court of appeals mistakenly believed that Whipple sought only $13,000, when it appears that Whipple actually sought $30,641.35. *See supra* note 3. Nevertheless, the trial court's conclusion is bolstered by the fact that Whipple was not completely defeated in its attempt to foreclose the Thayne's Canyon mechanic's lien. One of the recurring themes in Aspen's briefing is that "Whipple was *not* successful in obtaining a mechanic's lien foreclosure as to the Thayne[']s Canyon property." That statement is misleading, however, because while Whipple did not win one hundred percent (100%) of what it claimed under the Thayne's Canyon mechanic's lien, it did win much of what it sought, including the largest single element of that lien: the plumbing work. Whipple claimed $14,158 for plumbing work, and won $12,158 after the court deducted $2,000 in offsets. Additionally, Whipple claimed and recovered $10,200 for the value of "sewer laterals" that it added to the property. Finally, Whipple recovered $100 of the $780 it sought for backhoe services at the Thayne's Canyon property. Thus, Whipple prevailed on over $24,000 of the approximately $30,000 in claims under the Thayne's Canyon mechanic's lien.

¶ 30 There is a lot more to this story than just the net judgment or the fact that Whipple did not recover everything that it sought through its mechanic's lien. Aspen had only partial success defending itself from Whipple's claimed mechanic's lien on the Thayne's Canyon property, and it also had only partial success on its counterclaim for negligence.

Whipple likewise had only partial success, both in seeking to foreclose its mechanic's lien and in defending itself from Aspen's counterclaims. The mere fact that, once the dust settled, Aspen walked away with a net judgment of $527, does not convince us that Aspen was the "successful party" as we interpret that term in section 38–1–18 of the Utah Code. Thus, we find that the court of appeals correctly affirmed the trial court's finding of a draw in this case.

## CONCLUSION

¶ 31 The court of appeals correctly affirmed the trial court's interpretation of the term "successful party" in section 38–1–18. The term is synonymous with the term "prevailing party" as construed in non-mechanic's lien cases, and neither the language of Utah's mechanic's lien statute nor the self-evident purposes of section 38–1–18 preclude application of the flexible and reasoned approach to determining which, if any, party is entitled to an award of attorney fees. The common sense rationale supporting the *Mountain States II* and *Occidental/Nebraska* cases is sound, and absent a legislative mandate to the contrary, we see no reason why it should not be applied in the context of section 38–1–18.

¶ 32 Moreover, the flexible and reasoned approach was correctly applied in this case. The net judgment Aspen received was very small in relation to both parties' competing claims, and Aspen won less than one-third of what it sought on its counterclaim. Whipple was largely, though not wholly, successful, both in foreclosing its mechanic's lien on the Thayne's Canyon property, and in defending itself against Aspen's counterclaim. The court of appeals, after using the net judgment as a starting point, carefully weighed the relative success of the parties on their competing claims, balancing the amounts each party sought with the amounts each party recovered. The court of appeals thus correctly applied the flexible and reasoned approach to determining the successful party under section 38–1–18 of the Utah Code. Affirmed.

¶ 33 Associate Chief Justice WILKINS, Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Chief Justice DURHAM's opinion.