2004 UT 33

**Keith CARTER, Plaintiff and Appellant,**

v.

**D. Stephen SORENSEN, Defendant and Appellee.**

**No. 20020688.**

Supreme Court of Utah.

April 20, 2004.

James R. Hasenyager, Ogden, for plaintiff.

Richard K. Chamberlain, Richfield, for defendant.

WILKINS, Justice:

¶ 1 Keith Carter appeals the trial court's dismissal of his lawsuit, arguing that the court incorrectly concluded that he failed to exercise an option to purchase property, and that the trial court's finding that it could not determine the option price was incorrect. We affirm on other grounds, because there was no enforceable option agreement between the parties. Given this disposition, we need not address Carter's other points on appeal.

### FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 Carter was a farmer and rancher whose property, which included certain water rights, was foreclosed upon by the Farmers Home Administration ("FHA"). D. Stephen Sorensen, a potential buyer of the property, agreed that if he purchased the property he would grant Carter an option to repurchase all or part of it for the same price Sorensen paid. Sorensen's purchase was completed in March of 1996 for the price of $355,000, determined pursuant to an FHA appraisal. That appraisal estimated the value of Carter's property using each of the traditional appraisal methods—the cost approach, the income approach, and the sales comparison approach. In the sections evaluating each approach, the appraisal identified separate values for different portions of the property based on their character as irrigated, grazing, or pasture land. No specific values were given for the water shares. Likewise, the values given for each type of land in the income approach differed from those given in the other approaches. The appraiser's ultimate conclusion about the value of the land— the basis for Sorensen's price—is unaccompanied by any recitation of the relative values of each type of land.

¶ 3 Carter's option was valid until May 31, 1999. Prior to the option's expiration, Carter purchased a portion of the property back from Sorensen at a price agreed upon by the parties. That portion of the property included some, but not all, of the water shares that

Sorensen originally acquired. Carter later indicated a desire to purchase the remaining water shares pursuant to the option.

¶ 4 Wishing to ascertain the price Sorensen paid for the water shares alone, Carter asked Eric Johnson, who prepared the FHA appraisal on the property at the time of Sorensen's purchase, to deduce the price of each water share. Johnson, calling his estimate a consultation, not an appraisal, opined that each water share was worth $800. Carter then attempted to exercise the option to purchase the remaining twenty-six water shares at $800 per share. Sorensen was not willing to sell the shares at that price, instead arguing that he paid $47,000 for the shares, over $26,000 above the price Carter offered. Ten days before the option was set to expire, Carter deposited $20,800 into an escrow account for purchase of the water shares at the $800 price. Although Sorensen was notified of the deposit, he refused to transfer the shares, and Carter sued.

¶ 5 During the course of proceedings below, Johnson testified that his initial figure of $800 per share was based on calculations containing a mathematical error, and that the actual figure he would have used as an estimate of the value of each water share was $1,800. The trial court ultimately refused to enforce the option against Sorensen. It held that Carter missed the option deadline by not tendering Sorensen's $47,000 price before expiration of the option. The court further noted that it could not determine the price for the water shares.

## ANALYSIS

### I. STANDARD OF REVIEW

■ ¶ 6 We determine the existence of a contract, such as an option agreement, by resorting to principles of law; therefore, we grant no deference to the trial court that originally decided the matter. *See Nunley v. Westates Casing Servs., Inc.*, 1999 UT 100, ¶ 17, 989 P.2d 1077.

### II. EXISTENCE OF OPTION

■ ¶ 7 A contract, such as an option, must have definite terms, including the option price, or else it cannot be enforced by a court. *Nielsen v. Gold's Gym*, 2003 UT 37, ¶ 11, 78 P.3d 600. Because the parties' purported agreement for Carter to buy back any portion of the property Sorensen purchased contains no ascertainable price term, the agreement is unenforceable and the trial court's order must be affirmed.

¶ 8 The parties clearly intended to create an enforceable option agreement allowing Carter to buy back all or part of his farm from Sorensen. However, as a matter of law, they failed to do so because they did not include an identifiable price term for a purchase of less than the entire property. Although the agreement included language purporting to set the price at "the same price [Sorensen paid] to the FHA," that price is elusive.

¶ 9 Sorensen purchased the property from the FHA, which set the purchase price after reviewing Johnson's appraisal. The "price [Sorensen paid] to the FHA" was not required to be the value set by the appraisal, but the FHA apparently agreed with Johnson's conclusion and set the price at $355,000. The appraisal report contained assessments of the property's value utilizing the cost, income, and sales comparison approaches. Although the appraisal contained itemized values for portions of the property of differing character, these values are of no assistance in determining what price Sorensen paid for discrete portions of the property, including the water shares.

¶ 10 The application of the cost, income, and sales comparison approaches to valuation resulted in three different conclusions regarding the value of the property. Under the cost approach, Johnson valued the property at $369,300, while the income approach yielded a value of $319,000, and the sales comparison approach resulted in a value of $358,000. Johnson adopted none of these three methods, instead valuing the property at $355,000. Johnson's ultimate conclusion that the value of the property was $355,000 is unaccompanied by any itemized list of values for discrete portions of the property or any explanation of his methodology. Given that none of the approaches was adopted, it follows that the itemized values found in Johnson's evaluation of each of those approaches

are of no utility in determining the value of the water shares, or any other fraction of Sorensen's purchase.

¶ 11 Ignoring the itemized values in Johnson's appraisal, as we must, what is left is the sole fact that Sorensen paid $355,000 for the entire property. There exists no mechanism for determining what price Sorensen paid for any fraction of the property. The trial court faced this problem and, despite hearing all the evidence on the matter, ultimately concluded that it could not determine a price. We agree with the trial court that the price of the water shares is not ascertainable. The legal consequence of a missing price term is the unenforceability of the agreement. *Id.* at ¶¶ 11–12. Accordingly, although the trial court's disposal of the case appears to be premised on *Carter's* failure to exercise the option, the absence of a price term is the basis for our decision to affirm the trial court. *See, e.g., State v. Topanotes,* 2003 UT 30, ¶ 9, 76 P.3d 1159.

### CONCLUSION

¶ 12 Because the parties' agreement contains no price term, it is unenforceable and Carter's claim was rightly dismissed by the trial court. Affirmed on other grounds.

¶ 13 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Justice WILKINS' opinion.