2009 UT App 167

**Rick FIRKINS and All Star Motion Picture Catering, Plaintiffs, Appellants, and Cross-appellees,**

v.

**Paul RUEGNER and Pig Boys, Inc., Defendants, Appellees, and Cross-appellants,**

**and**

**Walter Zelig, Defendant.**

No. 20080685–CA.

Court of Appeals of Utah.

June 25, 2009.

---

8. Husband filed a motion to strike Wife's reply brief submitted on appeal. We hereby deny Husband's motion to strike.

Olivia D. Uitto, Salt Lake City, for Appellants and Cross-appellees.

Stephen W. Cook, Salt Lake City, for Appellees and Cross-appellants.

Before Judges BENCH, ORME, and DAVIS.

## MEMORANDUM DECISION

ORME, Judge:

¶ 1 Rick Firkins and All Star Motion Picture Catering (collectively, All Star) first claim the trial court erred in determining there was insufficient evidence to prove an enforceable contract existed between Firkins and Walter Zelig.[1] All Star has failed to convince us that the trial court erred in ruling that material terms were indefinite or missing from any agreement reached by Firkins and Zelig, precluding a binding, enforce-

---

1. Zelig's pleadings were stricken, and his default was entered after he failed to appear at trial.

able contract from arising. The trial court specifically found:

> The Court is not convinced that Firkins and [Zelig] ever came to an enforceable agreement during [the November 2001] negotiations.... The Court is not convinced that there was an actual purchase price. And, as to terms, the testimony of Firkins was that he could not recollect the length of a contract, when any sums were to be repaid, what was to occur in case of default, forfeiture, or penalties of any kind for non-compliance with the terms.

¶ 2 All Star contends that a price was agreed upon at the time of the exchange, but that Firkins simply could not recall at trial the exact price.[2] Firkins testified that he thought the purchase price was between $50,000 and $60,000. He also testified that "to tell you the truth, I—I don't know what the exact purchase price was, depending on, again, which day you would have asked Mr. [Zelig]." Firkins additionally testified that he did make some payments but was unsure of the exact amount he had paid. He also testified that he sometimes made payments to cover Zelig's rent directly to Zelig's landlord. Firkins's testimony regarding the purchase price supports the trial court's determination that there was no "definite" purchase price agreed upon, and that a material term was therefore missing that precluded enforcement of any agreement reached between Firkins and Zelig.[3] *See generally Nunley v. Westates Casing Servs., Inc.,* 1999 UT 100, ¶ 22, 989 P.2d 1077 ("'An agreement cannot be enforced if its terms are indefinite ....'") (citations omitted); *id.* ¶ 27 ("'An acceptance must unconditionally assent to all material terms presented in the offer, including price and method of performance, or it is a rejection of the offer.'") (citation omitted). Additionally, even if the price had been established, given Firkins's testimony as to the payments he made the record also fails to establish that Firkins fulfilled his key obligations under any agreement that may have been originally reached.

¶ 3 In the same vein, the trial court's determination that the second agreement between Zelig and Firkins was not enforceable is readily sustainable based on the evidence, or lack thereof. The court indicated it could not determine if the second negotiations were supposed to be "a modification of the first arrangement ... or a new contract," and it stated that, in any event, "one cannot modify a contract that never existed, or enforce a previously existing non-enforceable agreement." It further concluded that "[e]ven if these negotiations led to a new contract, which the Court does not find, ... the undisputed testimony of Firkins and his Exhibit P–9 show that he failed to pay for the vehicles" in full. The court also reasoned that there was still insufficient evidence to establish that Firkins and Zelig agreed upon a purchase price in the course of the second round of their negotiations. The court posited: "[I]t was Firkin[s]'s testimony that the purchase price would be the balance of what was left. But, what was that amount?"

¶ 4 As we conclude the trial court correctly determined that there was no definite purchase price agreed upon between Zelig and Firkins, the trial court also did not err in declining to enforce any agreement between them based on partial performance.[4]

---

2. Based on the contention that a price was originally agreed upon, All Star claims this case is distinguishable from *Carter v. Sorensen,* 2004 UT 33, 90 P.3d 637, because in *Carter* no agreement on price was ever reached. *See id.* ¶ 8. Because All Star, however, has not convinced us that the trial court erroneously concluded that no purchase price was agreed upon, *Carter* is directly on point. *See id.* ("The parties clearly intended to create an enforceable option agreement.... However, as a matter of law, they failed to do so because they did not include an identifiable price term.... Although the agreement included language purporting to set the price [by reference,] that price is elusive.").

3. We disagree with All Star's argument that Zelig's failure to file an action to enforce payment renders any agreement Firkins and Zelig had clearly valid and enforceable.

4. The trial court found that any payments made by Firkins could fairly be characterized as rent for the vehicles. In response to this finding, All Star claims the vehicles clearly were not rented when title was transferred. Even if Firkins and Zelig did not originally intend that Firkins would rent the vehicles, we do not think the trial court's characterization is unjust because Firkins did possess and use the catering truck to which, under the trial court's ruling, Zelig still held actual title.

*See Martin v. Scholl*, 678 P.2d 274, 275 (Utah 1983) ("[O]ur standard of sufficient part performance [is]: First, the oral contract and its terms must be clear and definite; second, the acts done in performance of the contract must be equally clear and definite; and third, the acts must be in reliance on the contract.") (citation and internal quotation marks omitted).[5]

¶ 5 Given the lack of an enforceable contract between Firkins and Zelig, the trial court's conclusion that Firkins converted the catering truck, trailer, and the trailer's contents from appellees Paul Ruegner and Pig Boys, Inc. (collectively, Pig Boys) is also sustainable. Such conversion occurred when Firkins removed the equipment from Ruegner's possession without any legal justification and thereby deprived Pig Boys of the possession to which it was legally entitled. *See Jones v. Salt Lake City Corp.*, 2003 UT App 355, ¶ 9, 78 P.3d 988 ("A conversion is an act of wilful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession.") (citation and internal quotation marks omitted), *cert. denied*, 90 P.3d 1041 (Utah 2004).

¶ 6 With regard to damages arising from the conversion, we conclude that sufficient evidence supported the trial court's determination that the vehicles' value was $100,000. "To the extent possible, the fundamental purpose of compensatory damages is to place the plaintiff in the same position he would have occupied had the tort not been committed." *Mahana v. Onyx Acceptance Corp.*, 2004 UT 59, ¶ 26, 96 P.3d 893. To compensate an injured party whose property has been converted, "[g]enerally, the measure for damages ... is the value of the converted property at the time of conversion, plus interest. This measure is appropriate because the remedy for conversion is analo-gous to a forced sale of the converted property from the plaintiff to the defendant." *Id.* (citations omitted). Although the trial court did not explain precisely how it determined the truck and trailer were worth $100,000, the record supports that $100,000 was a rationally determined value for the catering vehicles at the time of conversion. *See generally Sampson v. Richins*, 770 P.2d 998, 1007 (Utah Ct.App.) ("not[ing] that in the context of a damage award, a trial court's findings of fact must provide a sufficient basis for [an appellate] court to determine whether there is a rational legal basis as well as a sufficient factual basis for the award of damages," but also noting that an appellate "court can affirm the judgment if *any legal basis* exists to justify the trial court's award," even if a trial court fails to "identify the exact basis for [the] award") (emphasis in original), *cert. denied*, 776 P.2d 916 (Utah 1989).

¶ 7 All Star claims that damages should be limited to $50,000, the amount Pig Boys actually paid to purchase the vehicles. We disagree. Ruegner increased the value of the catering vehicles, after their purchase from Zelig, by making several repairs to bring them up to department of health standards and to enable him to properly license the vehicles. Ruegner's testimony further showed that prices of used catering trucks vary, depending on the year and amount of use, and could be between $75,000 and $110,000, or even up to $140,000.

¶ 8 Although there was no appraisal and the "exact" value was not known, we conclude that there was no impermissible speculation on the part of the trial court in determining the damages figure, based on the evidence presented at trial, including the "sweetheart" nature of the original purchase price, Ruegner's improvements to the catering truck, Ruegner's testimony regarding prices of catering trucks, and the fact that

---

5. While All Star also claims that there was an implied-in-fact contract, this argument was not preserved. All Star provides record cites showing that it preserved its general contract claim, but not particularly the argument that there was an implied-in-fact contract. We accordingly do not address that issue, *see Ong Int'l (U.S.A.) Inc. v. 11th Ave. Corp.*, 850 P.2d 447, 455 (Utah 1993) ("With limited exceptions, the practice of this court has been to decline consideration of issues raised for the first time on appeal.") (internal quotation marks and footnote omitted), and thus do not reach the argument advanced by appellees Paul Ruegner and Pig Boys, Inc. that an implied-in-fact contract claim arising from negotiations with Zelig is misplaced in a proceeding against them.

the catering truck and trailer were "unique."[6] *See generally Sampson,* 770 P.2d at 1007 ("[A]lthough an award of damages based only on speculation cannot be upheld, it is generally recognized that some degree of uncertainty in the evidence of damages will not suffice to relieve a defendant from recompensing a wronged plaintiff. As long as there is some rational basis for a damage award, it is the wrongdoer who must assume the risk of some uncertainty.") (citation, internal quotation marks, and emphasis omitted); *id.* ("[O]nce a defendant has been shown to have caused a loss, . . . the reasonable level of certainty required to establish the *amount* of a loss is generally lower than that required to establish the *fact* or *cause* of a loss. The amount of damages may be based upon approximations, if the fact of damage is established, and the approximations are based upon reasonable assumptions or projections.") (omission and emphases in original) (citations and internal quotation marks omitted).

¶ 9 With regard to the cross-appeal, we simply are not convinced that lost income, or loss-of-use damages, were appropriate in this case given that Pig Boys was awarded damages for the value of the catering vehicles, plus interest.

> When a plaintiff is awarded the value of his property at the time of the conversion, he is not entitled to additional damages for the loss of use of his property. Allowing a plaintiff to recover both market value and damages for loss of use would be tantamount to an award of double damages inasmuch as it would equate to charging the defendant for the property and then continuing to charge rent for its continued possession.

*Mahana,* 2004 UT 59, ¶ 27 (citations omitted).

¶ 10 Finally, respecting punitive damages, we uphold the trial court's decision to deny punitive damages based on its factual finding that Firkins did not act with the requisite culpability in converting the vehicles given his honest belief that he had an equitable claim to the vehicles. *See* Utah Code Ann. § 78B–8–201(1)(a) (2008). " 'Whether punitive damages [should be] awarded is generally a question of fact within the sound discretion of the [fact-finder], and will not be disturbed absent an abuse of discretion.' " *Burton Lumber & Hardware Co. v. Graham,* 2008 UT App 207, ¶ 10, 186 P.3d 1012 (alterations in original) (citation omitted).

¶ 11 Affirmed.

¶ 12 WE CONCUR: RUSSELL W. BENCH and JAMES Z. DAVIS, Judges.

---

6. While market value is usually measured with reference to retail value in a relevant market, "in the case of unique property," market value equates to "the value to the owner," *Henderson v. For–Shor Co.,* 757 P.2d 465, 468 (Utah Ct.App. 1988).